Filed 4/23/13  In re Lizarraga CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re SERGIO RAFAEL LIZARRAGA,<br><br>on Habeas Corpus. | B242180<br><br>(Los Angeles County<br>Super. Ct. No. BH 008245) |

APPEAL from an order of the Superior Court of Los Angeles County, Patricia M. Schnegg, Judge.  Reversed and remanded.

Kamala D. Harris, Attorney General, Jennifer A. Neill, Assistant Attorney General, Julie A. Malone and Charles Chung, Deputy Attorneys General, for Appellant.

Susan L. Jordan, under appointment by the Court of Appeal, for Respondent.

\* \* \* \* \* \*

Petitioner Sergio Raphael Lizarraga pleaded guilty to second degree murder in 1994 and was sentenced to 15 years to life. The Board of Parole Hearings (Board) denied parole in May 2011 but the trial court ordered the Board to vacate its decision and to conduct a new parole hearing. We conclude that the Board's decision is supported by some evidence (*In re Shaputis* (2011) 53 Cal.4th 192, 215 (*Shaputis*)) and therefore set aside the trial court's decision.

## THE CRIME

Petitioner, who was 24 years old in 1993 when the crime was committed, was married to Yesinia and became suspicious about the intentions of Jose De La Torre vis-à-vis his wife; petitioner also felt that he and Yesinia were drifting apart. He was absorbed in his work and did not pay enough attention to Yesinia and his young son. When Yesinia told him she was going to a party, petitioner thought that she was going to see De La Torre. In fact, there was nothing going on between De La Torre and Yesinia.

Petitioner disguised himself and armed himself with a gun. (Petitioner gave two explanations for the disguise. One was that he wanted to deflect suspicion on someone else, the other was that he didn't want De La Torre and Yesinia to recognize him.) He encountered De La Torre outside the latter's workplace, which was an automotive stereo shop on Whittier Boulevard in Los Angeles. He asked De La Torre whether he liked to "mess around with married women." The answer was, "Yes, so that I could see the stupid face of their husbands." Petitioner was in a jealous rage and thought that De La Torre was talking about him. He took out the gun and shot De La Torre four times at close range.

Petitioner fled but was apprehended shortly after the shooting.

## THE STANDARD OF REVIEW

"Accordingly, we conclude that the judicial branch is authorized to review the factual basis of a decision of the Board denying parole in order to ensure that the decision comports with the requirements of due process of law, but that in conducting such a review, the court may inquire only whether *some evidence* in the record before the Board

2

supports the decision to deny parole, based upon the factors specified by statute and regulation." (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 658, italics added.)

"We urge the Courts of Appeal to bear in mind that while the 'some evidence' standard 'certainly is not toothless' ([*In re*] *Lawrence* [(2008)] 44 Cal.4th [1181,] 1210), and 'must be sufficiently robust to reveal and remedy any evident deprivation of constitutional rights' [citation], it must not operate so as to 'impermissibly shift the ultimate discretionary decision of parole suitability from the executive branch to the judicial branch' [citation]. Under the framework established by legislation and initiative measure, the Board is given initial responsibility to determine whether a life prisoner may safely be paroled. (Pen. Code, § 3040.) The Governor is granted de novo review of the Board's decision, and is free to make his or her own determination, based on the same factors the Board must consider. (Cal. Const., art. V, § 8, subd. (b).) [¶] Although, as we made clear in *Lawrence*, the ultimate conclusion on parole suitability is subject to judicial review, that review is limited, and narrower in scope than appellate review of a lower court's judgment. The 'some evidence' standard is intended to guard against arbitrary parole decisions, without encroaching on the broad authority granted to the Board and the Governor." (*Shaputis, supra*, 53 Cal.4th at p. 215.) Review under the "some evidence" standard is more deferential than substantial evidence review. (*Id.* at p. 210.)

## THE BOARD'S DECISION

The Board had before it a document entitled Comprehensive Risk Assessment for the Board of Parole Hearings (hereafter Risk Assessment) prepared by forensic psychologist Michael F. Pritchard, Ph.D. We will not summarize the Risk Assessment in its entirety. We do note, however, it is thorough and detailed and contains, among other things, a reasonably complete review of petitioner's life history, which reflects that, other than this conviction, he has no criminal record.

The section of the Risk Assessment that addresses petitioner's understanding of the crime that he committed turned out to be of most concern to the Board. After examining statements that petitioner gave about the crime immediately after its

3

commission as well as statements that were contemporaneous with the Risk Assessment, Dr. Pritchard concluded: "The inmate's statement is largely a matter of externalization. He discusses primarily the behavior of his victim, which is somewhat disingenuous in regards to his assertion of the victim's statement to him, as he was, after all, the man holding the gun with violent intent. He does acknowledge his anger as a provocation and jealousy as motivation; however, he shows little insight into the dynamics of this. . . . [¶] In the above statement he does take full responsibility for the crime in the sense that he clearly states that he went in disguise to the man's place of work with the clear intention of shooting him. He does not, however, describe[] his own thoughts, feelings, and motivations in any self-aware, insightful manner."

In the hearing, deputy commissioner Jan Enloe, after noting that people fly into rages about their spouses without committing murder, asked petitioner whether he knew what had caused him to gun down De La Torre. Enloe noted that petitioner is still relatively young and upon his release could be expected to form a relationship with a woman, if not his former spouse. Enloe asked petitioner what had triggered the awful rage that led to murder. After petitioner ascribed it to "unfounded jealousy," Enloe expressed the concern that if petitioner could not identify the trigger, no one knew whether the same thing might not happen again. This exchange certainly validates Dr. Prichard's observation that petitioner does not have an adequate insight into the reason(s) he committed a brutal crime.

In reviewing petitioner's case, presiding commissioner Arthur Anderson noted that the murder was atrocious and cruel and that the unsuspecting victim was vulnerable. The manner in which the crime was committed "demonstrates an exceptionally callous disregard for human suffering." Commissioner Anderson thought that "[t]he motive for the crime was very trivial in that it was one of anger and rage and jealousy." Commissioner Anderson stated that petitioner was still a work in progress, with work still to be done by petitioner. Like commissioner Enloe, commissioner Anderson thought that Dr. Pritchard's conclusion was that petitioner had not gained sufficient insight into the reasons he committed the murder.

4

Commissioner Anderson also noted that petitioner had been cited for engaging with another inmate in mutual combat in 2005, which demonstrated a lack of control. The report of this incident states that petitioner and the other inmate were seen in the prison yard pushing and throwing punches at each other in the upper torso and the face.

Dr. Pritchard was of the opinion that petitioner presents a low risk for violence in the free community. His personal history and his institutional conduct indicate that he is unlikely to commit acts of violence or to generally engage in criminal behavior. "However[,] within the narrow context of an intimate relationship with a woman, his risk for violence, while perhaps still low, is more uncertain. He has not given himself the opportunity to understand the thoughts, feelings, and motivations which impelled his violent behavior." There was a risk that violent recidivism would increase if petitioner does not develop reciprocal relationships in the community, if he continues to harbor distortions about the crime, and if he does not take advantage of self-help group opportunities.

## THE TRIAL COURT'S DECISION

The trial court addressed the grounds for the Board's decision but evaluated them differently. Thus, as far as the callousness of the murder was concerned, the trial court did not think that the circumstances of this murder were exceptionally callous, citing inter alia *People v. Vasquez* (2009) 170 Cal.App.3th 370, 384-385. As to the triviality of the motive, the trial court noted that anger and jealousy involving a romantic relationship is a common motive for violent crime. With reference to petitioner's lack of insight, the court noted that there must be some evidence that the inmate poses a current threat to public safety, citing *In re Shaputis* (2008) 44 Cal.4th 1241, 1254. The fact that petitioner could not articulate an insightful explanation why he committed the crime does not indicate that he poses a threat to public safety. The mutual combat occurred six years before the parole hearing, and petitioner has remained discipline-free since then.

The court concluded that a determination that the petitioner lacks insight "cannot be predicated merely upon a hunch or intuition." A decision that is based on no evidence is arbitrary and capricious.

5

## DISCUSSION

"The 'some evidence' standard is intended to guard against arbitrary parole decisions, without encroaching on the broad authority granted to the Board and the Governor." (*Shaputis*, *supra*, 53 Cal.4th at p. 215.) We see nothing arbitrary in the Board's decision that denied petitioner's application for parole.

The Board's decision was reasoned and based on the evidence that was available to the Board. Petitioner's lack of insight seems to have been the primary reason why parole was denied. Commissioner Enloe clearly articulated why this was important for purposes of determining whether petitioner posed a danger to the public. As Enloe pointed out, if petitioner did not understand why he murdered De La Torre, it is hard to know whether such an act of violence could happen again.

We appreciate the thoroughness with which the trial court parsed through the reasons the Board gave in denying parole. Yet, it was not the trial court's task to correct evaluations made by the Board and to substitute the court's own evaluations for those of the Board. To name two examples, that the Board thought the murder to be exceptionally callous and the motive to be trivial did not empower the trial court to set aside these conclusions as erroneous. The trial court's power, as our own, was and is limited to determining whether there was some evidence to support these conclusions. Shooting an unsuspecting man four times at close range and a totally unfounded suspicion of unfaithfulness qualify as substantial evidence, and certainly as "some evidence," of callousness and triviality of motive.

We do not agree with the trial court's final conclusion that the finding petitioner lacked insight was merely a hunch or intuition. Dr. Pritchard's report on this point rests on solid foundations, which are lengthy statements made by petitioner, and his conclusions are closely reasoned. He traces petitioner's development from the point that he actually blamed the victim to a more insightful stage when he realized the tragedy that he had brought about in shooting De La Torre. We will not burden this opinion with a summary of Dr. Pritchard's extended analysis of various risk factors, but we do note that

6

various rating factors and systems were used in reaching the conclusion about risks posed by petitioner.[1]

Petitioner's efforts to sustain the trial court's ruling are unavailing.

Petitioner errs when he claims that the Board cannot rely on the nature of the crime to deny parole; the Board may rely on this factor as one of several in determining whether to grant or deny parole. (*Shaputis, supra*, 53 Cal.4th at p. 219.)

Like the trial court, petitioner seeks to revise the Board's findings because they are allegedly erroneous. Thus, petitioner contends that Dr. Pritchard's conclusions were "patently false" because petitioner's testimony at the parole hearing indicates he has "sufficient insight." When directly challenged by commissioner Enloe, all that petitioner could say that explained his crime was jealousy. The point is that the Board thought that there was more to it than that, as not every jealous husband guns down a suspected philanderer. Thus, the fact that there is testimony that indicates that petitioner is sincerely remorseful does not alter that there is some evidence that petitioner does not appear to fully understand the reason or reasons he shot De La Torre.

Petitioner points to his testimony that he now understands that he should have attempted to work out the problem he had with his wife by talking to her and seeking counseling. He claims not to have communicated this to Dr. Pritchard, which he states explains Dr. Pritchard's comment that petitioner's response was overly abstract and somewhat simplistic. But Dr. Pritchard's conclusion is based on petitioner's inability to move beyond the circumstance that he killed De La Torre out of jealousy. The fact that petitioner mishandled his relationship with his wife casts very little light on the reason(s) he committed murder.

Petitioner contends that his lack of insight supports a denial of parole only if it has a connection to his current dangerousness and that there is no such connection. We do

---

[1] The systems that were used were the Psychopathy Checklist-Revised, the Historical-Clinical-Risk Management-20 Structured Guide for the Assessment of Violence Risk and the Level of Service/Case Management Inventory.

not agree.  As commissioner Enloe pointed out, until petitioner arrives at an understanding of why he killed (other than the facile explanation that he was jealous), no one can say this might not happen again.  There is, in fact, a real connection between petitioner's lack of insight and his current dangerousness, especially when it comes to a new romantic relationship, as Dr. Pritchard pointed out.

The circumstance that there is much that can be said about petitioner that is positive is only to be welcomed and is promising in terms of parole sometime in the future.  The fact remains petitioner has yet to come to grips with the underlying reasons he committed this crime.

Finally, it is true the mutual combat was six years in the past when the parole hearing took place, but it could be said that when incarcerated for murder committed in a fog of rage, one incident of physical violence practiced on another human being is one too many.

## DISPOSITION

The order of the superior court granting the petition for writ of habeas corpus is reversed, and the case is remanded to the superior court with directions to enter a new order denying the petition.


FLIER, J.

WE CONCUR:



RUBIN, Acting P. J.



GRIMES, J.

8